UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FREEDOM FOUNDATION,<br><br>    Plaintiff,<br>    v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 117, et al.<br><br>    Defendants. | CASE NO. 3:22-cv-05273-DGE<br><br>ORDER GRANTING SUMMARY JUDGMENT |

**I    INTRODUCTION**

This matter comes before the Court on Defendants' joint motion for summary judgment. (Dkt. No. 39.)  For the reasons stated herein, the Court GRANTS summary judgment and dismisses Plaintiff Freedom Foundation's claims.[1]

---

[1] Plaintiff requests oral argument.  (Dkt. No. 41 at 1.)  However, the Court determines oral argument would not help the Court's disposition of this motion and denies Plaintiff's request.  *See* LCR 7(b)(4).

ORDER GRANTING SUMMARY JUDGMENT - 1

**II     BACKGROUND**

Plaintiff sues three affiliated local unions of the International Brotherhood of Teamsters that represent private and public sector workers in Washington State: Local 117, Local 763, and Local 760 (collectively, "Union Defendants"). (Dkt. Nos. 19 at 1; 21 at 2; 22 at 2.) None of the collective bargaining agreements between Union Defendants and public employers require employees to join the union as a condition of employment. (*Id.*) Employees may choose to join Union Defendants by completing membership agreements. (*Id.*) Public employees may also authorize their employer to deduct and transmit dues directly to their requisite union, although this is not required. (*Id.*) *See also* Wash. Rev. Code § 41.56.110(1) ("Upon the authorization of an employee within the bargaining unit . . . , the employer shall deduct from the payments to the employee the monthly amount of dues . . . and shall transmit the same to the treasurer of the exclusive bargaining representative."). An employee's authorization remains in effect until revoked. Wash. Rev. Code § 41.56.110(2)(c). "An employee's request to revoke authorization for payroll deductions must be in writing and submitted by the employee to the exclusive bargaining representative in accordance with the terms and conditions of the authorization." Wash. Rev. Code § 41.56.110(3)(a).

Plaintiff is a "non-profit Washington organization." (Dkt. No. 3-2 at 2.) Freedom Foundation Labor Policy Director Maxford Nelsen describes Plaintiff as an "organization that presents alternative views on labor unions to public employees[,]" "educates public employees about their First Amendment rights[,] and assists dissenting public employees to exercise those rights[.]" (*Id.*) Plaintiff helps public employees resign their union membership through its website OptOutToday.com. (Dkt. No. 3-1 at 2.) "An interested party may visit OptOutToday.com" to complete an opt-out form to mail to their union or, if the employee

1  desires, "there is a box that can be checked which will trigger [Plaintiff] to send a copy of the
2  opt-out demand with an envelope addressed to the respective union." (*Id.* at 3.) Plaintiff alleges
3  Union Defendants refuse to accept mail arriving in packaging with Plaintiff's logo or from
4  Plaintiff's return address. (Dkt. No. 3 at 2.)

5  Plaintiff pleads four causes of action: (1) § 1983 claim for violating dissenting public
6  employees' First Amendment rights; (2) claim under 28 U.S.C. § 2201 "[f]or failing to provide
7  procedural safeguards to ensure adequate protection of public employees' First Amendment
8  rights"; (3) § 1983 claim for conspiracy to violate public employee's First Amendment rights;
9  and (4) common law conspiracy. (Dkt. No. 1 at 14–19.) Plaintiff also moved to enjoin Union
10 Defendants from refusing its mail, which the Court denied. (Dkt. No. 33.) Union Defendants
11 move for summary judgment, arguing Plaintiff lacks standing and its § 1983 claims fail for lack
12 of state action and because Union Defendants' conduct does not violate public employees' First
13 Amendment rights.

14                           **III    DISCUSSION**

15  **A. Legal Standard**

16  A "court shall grant summary judgment if the movant shows that there is no genuine
17 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.
18 R. Civ. P. 56(a). The moving party may meet this burden by showing the non-moving party has
19 failed to provide evidence in support of their case. *See Fairbank v. Wunderman Cato Johnson*,
20 212 F.3d 528, 531 (9th Cir. 2000). In determining whether a genuine dispute of material fact
21 exists, "[t]he deciding court must view the evidence, including all reasonable inferences, in favor
22 of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017). Disputed
23 facts "that might affect the outcome of the suit under the governing law will properly preclude

24

the entry of summary judgment," but irrelevant or inconsequential disputes will not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B. Plaintiff Lacks Standing**

    1. <u>Organizational Standing</u>

An organization satisfies constitutional standing to sue on its own behalf if it has suffered injury as an entity and can make the necessary showings of causation and redressability. 33 Fed. Prac. & Proc. Judicial Review § 8345 (2d ed.). The Supreme Court has "held that where the defendants' 'practices have perceptibly impaired [the organizational plaintiff's] ability to provide [the services it was formed to provide] . . . there can be no question that the organization suffered injury in fact.'" *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 748 (9th Cir. 1991) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Thus, "an organization may establish 'injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question.'" *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019). Illustrating this standard, the Ninth Circuit held four legal services organizations representing current and future asylum-seekers had organizational standing to challenge a Department of Homeland Security rule announcing a new bar to asylum eligibility, because the new rule perceptibly impaired their ability to perform the services they were formed to provide. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021).

Plaintiff argues, if Union Defendants refuse its mail, "public employees will be required to mail and track the opt out cards themselves[,]" which Plaintiff argues will "directly frustrate [its] mission of assisting dissenting public employees who want to leave their unions and stop their dues deductions." (Dkt. No. 41 at 6.) Plaintiff further argues it is forced to expend

ORDER GRANTING SUMMARY JUDGMENT - 4

1    resources to combat Union Defendants' rejection.  National Outreach Director Matthew

2    Hayward attests it costs Plaintiff an additional $14.00 each time Union Defendants reject its mail

3    and around $83.50 if Plaintiff hires a process server.  (Dkt. No. 3-1 at 9.)

4           On the other hand, Union Defendants argue Plaintiff does not show frustration of mission

5    given "rejecting mail alone would not stop Plaintiff from assisting public employees who want to

6    leave their unions" and "[r]epetitive sending of mail does not require a shift in the organization's

7    activities[.]"  (Dkt. No. 47 at 2.)

8           The Court agrees with Union Defendants.  Plaintiff fails to show frustration of its mission

9    because Plaintiff mailing an opt-out card on a public employee's behalf is not crucial to its

10   purpose of educating and assisting union resignation.  Public employees have other options to

11   provide written opt-out notices.  Indeed, Plaintiff does not identify a single employee who has

12   tried but been unable to resign from Union Defendants.  (*See generally* Dkt. No. 41.)  And,

13   although Plaintiff argues that it received a rejected envelope from Local 117 on April 21, 2022

14   (after filing its complaint), which it resent on April 26, 2022 (s*ee id.* at 3, citing Dkt. No. 26 at 2;

15   43 at 2), Plaintiff does not explain the outcome of this mailing or provide evidence to suggest

16   any individual opt-outs contained in this envelope were not processed through other means, e.g.,

17   the employee mailing an opt-out card themselves.  (*See generally* Dkt. Nos. 26, 43.)

18          As for diversion of resources, Plaintiff cites *Smith v. Pac. Props. and Dev. Corp.*, 358

19   F.3d 1097, 1105–06 (9th Cir. 2004), arguing it has been required to divert its resources "that it

20   would not have engaged in but for [Union] Defendant's conduct." (Dkt. No. 41 at 6–7.)

21   Specifically, Plaintiff asserts additional resources are expended when the Union Defendants

22   reject Plaintiff's "envelopes with a return address identifiable as the" Plaintiff.  (*Id*. at 7.)  In such

23   instance, Plaintiff's staff are required to invest time in resending the opt-out forms and invest

24

ORDER GRANTING SUMMARY JUDGMENT - 5

additional funds to re-mail or possibly serve the opt-out cards originally included in the rejected mail. (*Id.*) *Smith* is distinguishable as the plaintiff in that case specifically alleged the diversion of resources was necessary to "monitor [statutory] violations and educate the public regarding" on-going discrimination. 358 F.3d at 1105. Here, the diversion of Plaintiff's resources is not the result of statutory violations because the rejection of Plaintiff's envelopes does not automatically mean the Union Defendants have refused to honor a request to revoke authorization "submitted by an employee." *See* Wash. Rev. Code § 41.56.110(3)(a).

In the end, however, even if the Court were to find Plaintiff must divert resources to combat Union Defendant's mail rejections, because there is no frustration of Plaintiff's core mission, it fails to establish organizational standing.

2. <u>Third Party Standing</u>

For third-party standing, "'litigant[s] must have suffered an 'injury in fact,' thus giving [them] a 'sufficiently concrete' interest in the outcome of the issue in dispute; [litigants] must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect [their] own interest." *Home Care Ass'n of Am. v. Bonta*, 2022 WL 445522, at *3 (9th Cir. Feb. 14, 2022) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

In denying Plaintiff's motion for a preliminary injunction, the Court found "Plaintiff does not provide, nor is the Court aware of, caselaw supporting Plaintiff's assertion that it can establish standing to sue for constitutional violations committed against a third-party, simply because Plaintiff has a limited agency relationship with that third-party." (Dkt. No. 33 at 6.) In its response, Plaintiff does not provide caselaw in support of their "limited agent" standing theory. (*See generally* Dkt. No. 41.) Contrary to Plaintiff's argument, a non-profit organization providing generalized information to interested public employees, does not mirror other close

relationships recognized by Courts, including attorney-client or vendor-client relationships. Plaintiff provides only conclusory arguments that it maintains close relationships with employees it assists.

Union Defendants argue that because Plaintiff does not participate in the act of selling, it "should not be able to characterize itself as a vendor" for purposes of third party standing. (Dkt. No. 47 at 3) (citing Plaintiff's assertion that it does not charge public employees for its services). Union Defendants further argue the cases in which courts have found vendor third-party standing are "totally unlike the circumstances in the present case." (Dkt. No. 47 at 3.) The Court agrees. In *Craig v. Boren*, 429 U.S. 190, 192–93 (1976), the Supreme Court recognized third-party standing of a licensed beer vendor to challenge a statute restricting the sale of 3.2 percent beer to men and women of different ages. In *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 207 (4th Cir. 2020), *as amended* (Aug. 31, 2020), the Fourth Circuit held Atlantic Guns, a "federally licensed firearms dealer that operates several commercial gun stores in Maryland" had third-party standing to challenge gun restrictions. Plaintiff is not selling a product or service to employees, nor is it challenging a regulation or law that implicates a public employee's access to that product or service. Accordingly, Plaintiff does not have standing to bring suit.

        C.        **Plaintiff's Claims Fail on the Merits**

Even if the Court assumes that Plaintiff has standing, its claims fail on the merits. To bring a § 1983 claim, a plaintiff must show the defendant deprived it of a right secured by the Constitution and acted "under color of state law." *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020). Here, Plaintiff has established neither. Plaintiff does not show Union Defendants are state actors nor does it show Union Defendants deprived it of a Constitutional right.

### 1. Union Defendants Are Not State Actors

Plaintiff does not sue Washington State. Instead, it sues three private actors. State action analysis begins with "identifying the specific conduct of which the plaintiff complains." *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1108 (9th Cir. 2022), *cert. denied*, 215 L. Ed. 2d 51, 143 S. Ct. 783 (2023) (internal quotation marks omitted). Then, courts in the Ninth Circuit "employ a two-prong inquiry to analyze whether Washington's 'involvement in private action is itself sufficient in character and impact that the government fairly can be viewed as responsible for the harm of which plaintiff complains.'" *Belgau*, 975 F.3d at 946 (quoting *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013)). First, we must analyze "whether the claimed constitutional deprivation resulted from 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible[.]'" *Id.* Second, courts consider "whether the party charged with the deprivation could be described in all fairness as a state actor." *Id.* at 947. The Ninth Circuit uses four tests when analyzing this second prong: (1) the public function test, (2) the joint action test, (3) the state compulsion test, and (4) the governmental nexus test. *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1122 (9th Cir. 2022), *cert. denied*, 214 L. Ed. 2d 451, 143 S. Ct. 749 (2023).

Here, the specific conduct of which Plaintiff complains is Union Defendants' refusal to accept Plaintiff's mail. Contrary to Plaintiff's argument, Washington law does not create a "right or privilege" for Union Defendants to reject Plaintiff's mail. Plaintiff argues Union Defendants actions arise from their authority under the Revised Code of Washington §§ 41.56.090, 41.56.080,[2] and 41.56.110. (Dkt. No. 41 at 19.) Yet none of the statutory provisions cited by

---

[2] Revised Code of Washington § 41.56.080 provides:

Plaintiff involve whether Union Defendants accept (or do not accept) mail from organizational third parties like Plaintiff.  Plaintiff argues Revised Code of Washington § 41.56.080 strips employees "of their freedom to speak on the topics of wages, hours, and working conditions and a myriad of other topics agreed upon between the exclusive bargaining representative and the public employer." (Dkt. No. 41 at 18.)  But this allegation is not relevant to the conduct of which Plaintiff complains.

Plaintiff also argues:

> [Plaintiff] asserts that the Unions wrongfully refused to accept employee requests to resign from their union and revoke any prior dues authorizations when those requests are packaged and mailed to the Unions by [Plaintiff]; and that the Unions took these actions in accord with the language of the statutory system codified by Washington State in RCW Chapter 41.56., specifically RCW 41.56.110. . . . The Unions have not alleged any facts regarding this assertion.

(*Id.* at 19.)  But nothing in Revised Code of Washington § 41.56.110 pertains to Plaintiff's claims against Union Defendants.  Plaintiff appears to argue Union Defendants refusal to accept its mail is authorized by these statutory provisions because employees are required to notify their

---

> The bargaining representative which has been determined to represent a majority of the employees in a bargaining unit shall be certified by the commission as the exclusive bargaining representative of, and shall be required to represent, all the public employees within the unit without regard to membership in said bargaining representative: PROVIDED, That any public employee at any time may present his or her grievance to the public employer and have such grievance adjusted without the intervention of the exclusive bargaining representative, if the adjustment is not inconsistent with the terms of a collective bargaining agreement then in effect, and if the exclusive bargaining representative has been given reasonable opportunity to be present at any initial meeting called for the resolution of such grievance.

Revised Code of Washington 41.56.090 provides:

> The commission shall promulgate, revise or rescind such rules and regulations as it may deem necessary or appropriate to administer the provisions of this chapter in conformity with the intent and purpose of this chapter and consistent with the best standards of labor-management relations.

ORDER GRANTING SUMMARY JUDGMENT - 9

exclusive bargaining representative if they wish to revoke their authorization for the state to deduct dues from their paychecks.  This argument fails as the statute clearly does not contemplate Plaintiff's involvement in this process one way or the other.  The conduct at issue, rejecting Plaintiff's mail, is not a state statute or policy but merely a private dispute between Plaintiff and Union Defendant.  Therefore, Plaintiff fails to satisfy the first prong of the Court's analysis.

      Plaintiff also fails to establish Union Defendants are state actors under the second prong. Union Defendants argue they do not qualify under any one of the four tests recognized in the Ninth Circuit. (*See* Dkt. No. 39 at 15–16.)  In response, Plaintiff argues:

> [Union Defendants] cite *Belgau* and *Wright* for the proposition that 'unions are not state actors under § 1983 simply because a public employer makes dues deductions based on information provided by the union.'  This is a red herring because the actions of a public employer are not at issue here.  The actions of the Unions themselves is at issue.  Contrary to the [Union Defendants'] assertion, [Plaintiff] does allege that the Unions can fairly be considered a state actor. [(*See* Dkt. No. 1 at 2–3.)]  Because the Union incorrectly identified the contested conduct at issue and thus did not squarely answer the Foundation's allegations, the Foundation finds it difficult to put forward facts at this stage of litigation that the Court could use to analyze the Unions conduct. The Foundation believes further discovery on these issues is warranted and requests the Court grant time for further discovery under FRCP 56(d).

(Dkt. No. 41 at 21.)  Plaintiff alleges Union Defendants can refuse mail because the State of Washington gives Union Defendants "a privileged platform whereby they directly require the government to withhold dues form employees' salaries" and this withholding ends only if public employees disassociate through the union (i.e., the bargaining representative).  (*See* Dkt. No. 1 at 2–3.)  But, Union Defendants could easily reject Plaintiff's mail no matter if the statutory provisions required the employee to provide written notice to their bargaining representative. Plaintiff appears to try to connect the rejection of its mail with the rejection of mail from a public employee—but the two actions are not synonymous.  Plaintiff's argument that, by rejecting its

ORDER GRANTING SUMMARY JUDGMENT - 10

mail, Union Defendants are impermissibly using the statute to prevent employees from resigning their union memberships does not hold water given that public employees can personally contact their bargaining representatives to effectuate their withdrawal decision.  Plaintiff is mistaken in arguing Union Defendants "did not squarely answer [its] allegations" given Union Defendants argued Plaintiff failed to qualify as a state actor.  (*See* Dkt. No. 39 at 15–17.)  Further, Plaintiff provides absolutely no reason as to why it would be unable to establish state action at this phase in the litigation given it identifies no missing discoverable information that it requires.[3]

Turning to the second prong, Plaintiff likewise fails to establish Union Defendants are state actors under any of the four tests recognized by the Ninth Circuit.  Plaintiff argues again that it "could posit theories [Union Defendants] may put forward, but those would be pure speculation because the Unions have not articulated a theory supported by sufficient alleged facts for summary judgment under which [Union Defendants] may lawfully refuse opt out cards from public employees when mailed in packages identifiable as sent by [Plaintiff]." (Dkt. No. 41 at 21.)  The Court finds no relevance in this argument.  Plaintiff next appears to argue Union Defendants qualify as state actors under the joint action or the governmental nexus test, but Plaintiff satisfies neither.  (*See id.* at 21–22.)

Joint action between "a state and a private party may be found in two scenarios: the government either (1) 'affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party,' or (2) 'otherwise has so far insinuated itself into a

---

[3] Plaintiff asserts that Union Defendants fail to respond to its state action argument in their motion for summary judgment, and "[s]hould the Union's file a reply addressing the Union's conduct at issue in this case, [Plaintiff] requests, in the interest of justice, the Court permit it to file a surreply[.]" (Dkt. No. 41 23.)  Under Local Civil Rule 7(g), a surreply must be filed within five days of a reply brief and will be limited to a request to strike extraneous material in the reply.  Plaintiff fails to follow the procedure outlined in this rule, so the Court will not consider a surreply.

position of interdependence with the non-governmental party,' that it is 'recognized as a joint participant in the challenged activity.'" *Belgau*, 975 F.3d at 947 (quoting *Naoko*, 723 F.3d at 996)).  The decision to reject Plaintiff's mail was made by Union Defendants; Plaintiff provides no evidence of affirmation, authorization, encouragement, or assistance from Washington State.  Moreover, Washington is not interdependent on Union Defendants.  Under the statute, Union Defendants are responsible for informing the State when an employee chooses to opt out of paying dues—this is not a function performed by the state.  *See* RCW § 41.56.110(4) ("The employer shall rely on information provided by the exclusive bargaining representative regarding the authorization and revocation of deductions.")

To the extent Plaintiff bases its argument on the state's role in deducting dues from public employee paychecks, the Ninth Circuit holding in *Belgau* clearly precludes this argument.  In *Belgau*, state employee plaintiffs signed membership agreements authorizing their employer, Washington state, to deduct union dues from their paychecks and transmit them to their union.  The Ninth Circuit Court held there was no state action because "providing a 'machinery' for implementing the private agreement by performing an administrative task does not render Washington and [the union] joint actors . . . Much more is required; the state must have 'so significantly encourage[d] the private activity as to make the State responsible for' the allegedly unconstitutional conduct."  975 F.3d at 948 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 53–54 (1999)).  *See also Wright*, 48 F.4th at 1124 (holding "processing authorizations for dues deductions and remitting the payments to the union" did not qualify as joint action between a union and the state).

Under the governmental nexus test, there must be a "sufficiently close nexus between the State and the challenged action of the private entity so the action of the latter may be fairly

treated as that of the state itself." *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1109–10 (9th Cir. 2022), *cert. denied*, 215 L. Ed. 2d 51, 143 S. Ct. 783 (2023) (internal quotations omitted). This occurs if the State has coercive power or provides significant encouragement, but not where the State merely approves or acquiesces the private parties' action. *Id.* Plaintiff argues it establishes a close nexus between Union Defendants' refusal to accept its mail and the state because:

> In RCW 41.56.110, the Washington State legislature delegated the state employer's affirmative obligation to ensure employees' ability to exercise their First Amendment rights to the Unions. It did so by requiring the state employer to rely on the information provided by the union; requiring the state employer to transmit any dues authorizations received from public employees to the union; requiring the state employer to deduct dues from employee paychecks after receiving notice from the union—not the employee. RCW 41.56.110. [Plaintiff] asserts that the statutory system created by the Washington State legislature provides such significant encouragement to the Unions to exercise the power granted to it by statute to acknowledge and transmit receipt of employee union resignations and revocations of dues deductions that the actions of the Unions may be considered to be the actions of the State.

Plaintiff's argument fails to identify the conduct at issue—Union Defendants' refusal to accept its mail—and focuses instead on the statutory provisions of Revised Code of Washington § 41.56.110. Nowhere in its response does Plaintiff identify a statutory or constitutional obligation which it has delegated to the Union Defendants beyond the conclusory argument that it must "ensure employees' abilities to exercise their First Amendment rights." (Dkt. No. 41 at 22.) Plaintiff acknowledges public employees may still submit their resignations personally as envisioned by the statute. (*See id.* at 6.) Union Defendants thus do not share a close nexus with the state such that they qualify as state actors. Given the lack of state action, Plaintiff's claims under § 1983 must be dismissed.

       2. <u>Plaintiff Fails to Show Deprivation of Constitutional Rights</u>

ORDER GRANTING SUMMARY JUDGMENT - 13

Even if the Court assumes arguendo that Plaintiff's claims involve state action, they will fail on the merits as Plaintiff does not allege violations of a Constitutional right. Plaintiff provides no authority, and the Court is unaware of any, to support its contention that Union Defendants are constitutionally required to open mail from Plaintiff. As discussed, receiving mail from a public employee is not synonymous with receiving mail from Plaintiff. Instead, Plaintiff argues that public employees have a First Amendment right to disassociate from their union, and if Union Defendants refuse to receive an employee's communication affirming that disassociation, "then the employee's resignation cannot be processed and effectuated." (Dkt. No. 41 at 13.) But this scenario is not before the Court. Plaintiff alleges Union Defendants refuse to accept *its* mail, not communications from public employees. Even if Plaintiff's mail contains communications from or on behalf of employees, the Court is not persuaded this refusal impinges on public employee rights given they can submit the resignations themselves using the templatized opt-out forms provided by Plaintiff.

**D. Court Will Not Permit Additional Discovery**

Plaintiff asks the Court to refrain from ruling until Plaintiff has had sufficient time to complete discovery, "so that it can discover and present facts essential to justify its opposition in accord with [Federal Rule of Civil Procedure] 56(d)." (Dkt. No. 41 at 23.) If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may allow additional time to take discovery. *See* Fed. R. Civ. P. 56(d)(2). Plaintiff has not identified specific reasons for why it cannot adequately respond to Union Defendants' summary judgment motion. Thus, the Court finds no compelling reason to delay its ruling to allow Plaintiff additional time to collect discovery.

## IV   CONCLUSION

Accordingly, and having considered Union Defendants' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Union Defendants' motion for summary judgment (Dkt. No. 39) is GRANTED.  The parties' joint motion for an extension of time (Dkt. No. 49) is MOOT.

Dated this 15th day of May, 2023.

David G. Estudillo
United States District Judge